Henry G. Smith, J.,
delivered the opinion of the Court.
Cynthia Brown exhibits this bill against W. W. Berry, to injoin him from obstructing her right of way, over his land, to the highway. Berry denies — first, that she has the right of way; and, second, that his acts, of which complaint is made, are such an obstruction of the way as authorizes her to complain.
In 1842, Barrow was the' owner of the tract of land now held by the complainant, and of the tract now held by the defendant. In June, 1842, Barrow conveyed the land of complainant to Saunders, and soon after, the land of the defendant to Douglass. The estate of the complainant, is an estate in dower, assigned to her as the widow of Saunders. Berry’s estate is in fee, as the grantee of Martin, who was the grantee of Douglass. The two tracts of land adjoin; that of Saunders lying on the east of the land of Berry.
Before Barrow became the owner of the two tracts, and during his ownership, and thence to the present time, a way existed, and still exists, across and along the northern line of the tract conveyed to Berry, for the benefit of the tract conveyed to Saunders, and to some extent, for the benefit also of the *100 tract conveyed to Berry. The way begins at and abuts upon the western boundary of the tract conveyed to Saunders, and extends thence over and along the line of the land conveyed to Berry, to the highway. The way was enclosed upon the sides, from end to end, by fences, before and at the time Barrow became the owner of the lands, and has continued so enclosed, from thence to the present time.
The way was from the beginning, and continually has been, and still is, the only way ever used, or existing, of ingress or egress between the land conveyed to Saunders, and the highway referred to. No access can, or at any time could be had, from the land to the highway, other than by the way in question, or some way over the Berry tract, or over the land of strangers to both tracts.
The highway spoken of, is the Eranklin Turnpike, a public road of great public use and importance.
The way, as described, has been so established and used for a period of about thirty-five years; and without obstruction, molestation or question, until the present controversy arose recently.
The deed made by Barrow to Saunders, conveyed the land to Saunders, and in terms, “with . all the hereditaments, rights, privileges and appurtenances, belonging or in any way appertaining to the land.”
Upon this statement of the case, the rights of the parties are apparent. The complainant is entitled to the right of way along the established way, by force of the express terms of grant contained in. the deed; and by force of the grant, were those terms not con *101 tained; and as a way of necessity appurtenant to her land.
First, The express terms of the deed, “rights and privileges,” carried to the grantee, the right of way with the land. Such was the intent of the parties, and such the purpose of the words; that such was the intent and purpose the proof puts beyond a doubt; the way abutted upon the land, was established and in use, at and before the conveyance to Saunders, has been continued in use from thence to the present time; covering a period of thirty-five years, all the time for the benefit of the land; all the time necessary for ingress and egress between the highway and the land; all the time enclosed and apparent by fences; never obstructed, molested or questioned by any of the owners of the Berry tract; always acquiesced and concurred in by the successive owners of the Berry tract, from the beginning to the present controversy. These facts show, that the way was incident to the land, and that the intent and purpose of the parties and the words, were to convey the right of way with the land. The conveyance and the words, had the effect to create and make the easement of the way an appurtenance to the land: 3 Kent. Com., 420; Washb. Easements, 32, 33, 34, 36.
The use of the way, its necessity for ingress and egress, the acquiescence of the successive owners of the Berry tract, the absence of obstruction or question, subsequent to the conveyance to Saunders, are competent and persuasive evidence of the intent and purpose of the parties and the words, at the time of the *102 making of the conveyance. Tke facts subsequent, as well as tbe facts existent at and before tbe time tbe conveyance was made, are competent evidence of tbe intent and purpose: 1 Sumner Rep., 503.
Parol evidence is competent to prove tbe existence of an easement appertaining to land. And so also, is sucb evidence competent to prove a right of way incident to land, under circumstances as in this case; and especially is sucb evidence competent to point tbe words of tbe deed to tbe object they are intended to designate and grant: 2 Washb. Real Prop., 28, and cases cited there.
Conceding, therefore, tbe effect ascribed to tbe union of tbe title and possession of both tracts in Barrow, to extinguish tbe easement of tbe way/ existing while they were owned by' separate persons; it does not, therefore, follow that Barrow’s conveyance did not carry with it to Saunders tbe right of way. Certainly an easement is extinguished by tbe union of the title and possession of tbe dominant and servient estates, in one owner. A man cannot have an easement in bis own land. But a right of way may be so incident to an estate, that a grant of tbe estate will carry with it tbe right of way, though the grantor be at tbe time, tbe owner of tbe servient estate upon which tbe way is: 2 Washb. Real Prop., 29, 44.
A peculiar illustration of this is, when the owner of land in a city, subdivides it into lots, with intersecting streets, and sells tbe lots to purchasers. Until sale be made by tbe owner, no easement exists in tbe streets. A man cannot have an easement in bis *103 own land, but when lie sells and conveys a lot abutting upon tbe street, the purchaser takes, as incident to his lot, a right of way in the street. This is true of the street as a private way, not intended for the public by dedication. Upon the facts, a presumption accrues that the owner intended and did convey to the purchaser, the right of way, with the lot conveyed.
The right of the purchaser of the lot, to the easement or use of the street, is sometimes put on the ground of estoppel, but it may well stand upon principle, that the grant of the lot carries with it the easement of the street, under circumstances of the kind mentioned.
ISFo distinction is observed, in the application of the principle between larger parcels of land and small lots, or between many parcels and few. It is not, therefore, material that the land conveyed to Saunders, was a large parcel. It abutted on the way; and the way was open, apparent, had been continuously used for the lands, and was necessary to ingress and egress between the land and the public way. Necessary, as here used, is not intended to express a condition of what, in relation to private ways, is called - of strict necessity.
The principles here declared are sanctioned by the authorities. Thus, in Washburn on Easements, 42, etc., it is said: “Although no easement in one parcel can be said to be appurtenant to another, by reason of any use made of the two, so long as they both belong to the same person, the cases are numerous where, upon dividing the heritage, as it is called — that is, by the *104 owner of two or more estates, or parts of an estate, selling one of them by itself, and retaining the other, or conveying to some third person — privileges in favor of one, have been held to pass as incident to the same, and a corresponding burden imposed upon the other, from the nature of the estate, the arrangement of the parts of the estate, and the degree of necessity there is of giving such a construction to the conveyance, in order to give it a reasonable effect.” “The ground on which this doctrine rests, seems to be, that where the owner of two heritages, or of one heritage consisting of several parts, has arrangod and adapted these, so that one derives a benefit or advantage from the other, of a continuous and obvious character, and he sells one of them, without making mention of those incidental advantages or burdens of one in respect to the other, there is, in the silence of the parties, an implied understanding and agreement, that these advantages and burdens, respectively, shall continue as before the separation of the title.”
“Thus, when two parcels lay, one in front, and the other in rear, in relation to a highway, and there was a private way used over the front lot, from the rear one to the highway, and the owner of the two conveyed the front lot to a stranger, it was held, that he took it subject to the use of this private way from the rear lot to the highway: 7 Md., 552. So, when a parcel of' land was conveyed, to which the owner had been accustomed to have access by a way across another open parcel, to the highway, it was held, that his grantee might use this way, though not of absolute necessity, if *105 another "way could not be constructed by him at a reasonable expense, having reference to the value of the land:” 8 Allen, 1. See also, 1 La. Ann. Rep., 407.
In the view thus presented of the ground on which the complainant’s right of way may be placed, it is not obvious that the common use of the way by the owners of both tracts, through the whole period of its existence, is a fact of material import. It is conceded, that when two persons occupy premises together, the possession is to be deemed with the party having the title; and the occupation of the former not adverse to the latter. Perhaps, if the right of the complainant rested on prescription, or on adverse possession, the common user might negative the claim, that the possession was adverse, and so defeat her title. But the right of the complainant does not rest upon adverse possession. It is grounded, first, on express grant by the terms of the deed; next, on the implication that the grant embraces in its effect, the way as incident to the land granted. If, however,’ it were necessary to rely on an adverse possession to support the title to the way, it is quite probable that the adverse quality of the possession might be maintained. The facts in proof, may well support the view, that the use of the way by the owners of the Saunders tract, was not by mere sufferance of the owners of the Berry tract, but was under a claim of right, and independent of the dominion of the owners of the Berry tract. Clamorous defiance is not necessary to show an adverse claim of right. The claim may be inferred from the origin of the possession, the use without permission and without *106 obstruction. Long acquiescence will, under many circumstances, support a presumption of a want of right to object.
Second, The right of way of the complainant, may be maintained on the ground of a way of necessity.
If it be a way of necessity, the grant of land carries with it the right of way, and whether mention of it be made in the grant or not: Washb. Eas., 31; 3 Kent’s Com., 420; Wool. Ways, 21.
A way of necessity arises, when the owner of two parcels conveys one parcel, which is wholly surrounded by the other land of the grantor, or partly by this and partly by 'that of a stranger. The way is so far appurtenant to the land, as to pass with the land to the grantee, provided he have no other way of access to the same: Washb. Eas., 62.
At the time the land was conveyed to Saunders, and from thence to the present time, the way existed, and was and is the only way by which access can be had to the great highway referred to. No reason is shown why the existing way ought to be shut up, and the complainant driven to a way upon the land of another, and stranger to the title to her tract.
Third, The right of way of the complainant may be put upon another ground, which has sanction in the authorities, — the principle of revivor.
An easement of way, which has been suspended, or extinguished by the union of title and possession of the dominant and servient estates in one owner, may be revived, and pass with the grant of the dominant estate. The elements of the rule which works such re- *107 vivor, are said to be: that the way must be apparent, and the use continuous, and the way necessary, though not strictly so, to the enjoyment of the estate granted. All these elements are grouped in the present case. The way was enclosed by fences; the use of it was continuous, from before and during the ownership of Barrow, and at and after the grant of the land to Saunders, and was necessary to ingress and egress between the land granted and the public highway. The concurrence of these facts, shows that the parties to the conveyance intended and expected the right of way to belong to the land, and to pass with the grant; and the law gives that effect to the grant: See 'Washb. Eas., 523, and following, and the doctrines and authorities there stated.
It follows, that the complainant has a right of way along the way in controversy. But to what extent, and in what manner, is the next question. Berry denies that the acts being done by him, when the bill was filed, are an obstruction of, or infringement upon her right of way, supposing her to have a right of way along the way over his land.
The facts material to this aspect of the case, are:—
The lane extends, and so has done from the beginning, from the western boundary of the land of complainant, westwardly to the highway. Bordering on the eastern side of the public highway, at a short distance, is a small and shallow watercourse, running parallel to the highway, called Brown’s creek, and crossing the western end of the private way, and necessary to be crossed to get upon the public highway.
*108 The northern line of the fence bordering or enclosing the private way, is nearly straight, and is on the dividing line of the land of one Armistead, and the land of Berry. The whole of the lane is on Berry’s land, and the fence on his side deviates, in several places, from a straight line.
The width of the lane is irregular. It widens as •it approaches and reaches the western end, at the creek, deflecting to the south. At this point is the greatest width. Not far from midway between the ends of the lane, is the narrowest width.
At the widest point, which is at the creek, the width is about eighty feet. At the narrowest point, about-feet. The average width is about thirty feet.
Berry set about to straighten his fence, and to do this, set it in upon the lane — diminishing the original width generally — at some points more, and at others less — at the narrowest point -- feet; at the widest, at the creek, about forty feet; making an average width of about twenty-five feet. A width of twenty feet is as little as will answer for a carriage or wagon way. A convenient width is about thirty feet.
Eight or ten years ago, Brown, the then husband .of the complainant, and since deceased, in co-operation with Berry, built a bridge across the creek, and improved the bed of the way by covering it with stone of a width of a few feet. The bridge was built upon the south side of the original lane, and the site is taken in by Berry’s proposed fence. It was destroyed during the recent war, and has not been repaired.
The stoned roadbed, as it approached the creek, de- *109 fleeted toward and to tbe bridge. Tbe proposed fence takes in a part of tbis roadbed near and at tbe bridge.
At a point not far from midway from end to end of tbe lane, is an outcropping of rock, of small size and extent, not materially interfering with tbe travel, and easily removable. At tbis rock, the stoned roadbed deflected slightly to tbe south, to pass around tbe rock. Tbe proposed fence trenches, for a few yards in length, in and upon the stoned bed, two or three feet.
Tbe lane as straigntened by tbe proposed fence, .enters tbe creek a few feet north of tbe site of tbe bridge, and at a crossing, where tbe grades of ascent and decent are easy and convenient; tbe crossing is where a straight extension of tbe lane toward tbe west enters the creek, and to tbe highway.
In this aspect of tbe facts touching tbis branch of inquiry, tbe question is: what is tbe extent of tbe right of tbe complainant, in respect of the direction and width of tbe way, and of the site of the- bridge, and crossing at tbe site of tbe bridge.
Tbe owner of tbe easement of way, is entitled to tbe use of tbe way, and the owner of the land on which tbe way is, is entitled to all other uses of the land, not inconsistent with, or obstructing tbe lawful use of the way, by tbe owner of tbe easement of way.
If tbe right of way be held by grant, tbe extent of the way, and tbe use of it, is measured by the express or implied terms of tbe grant.
If tbe terms of tbe grant expressly define tbe width, direction or other circumstances of tbe way, tbe width, *110 direction or other circumstances, are such as are defined by the terms of the grant.
On the other hand, if the width, direction, and other circumstances be not expressly defined, they are to be ascertained by presumption and implication. In such case, the presumption and implication derives effect, and ascertains the particulars sought, from the condition of the way, as it was accustomed to be at the time of the grant; the accustomed use then made of the way, the conveniences then suitable to the reasonable enjoyment of the land granted, so far as they relate to the way. Resort is made to these and like circumstances, to ascertain what the one party intended to convey, and the other party rightfully expected to receive. These circumstances show the interest of parties, and the scope and effect of the grant.
The presumption, from these circumstances, does not go to the extent of defining the character of the way, to be in strict conformity to the circumstances existing at the time of the making of the grant. It goes no further than to define the general kind and character of way granted. It does not exact that the fences in which was the way, shall forever remain as they were, nor that the track of the way shall pursue forever the precise line it then had — nor that a breadth of ground shall always remain, exactly or fully at every point, as then was included within the fences inclosing the way. The presumption exacts, that the genei’al direction shall continue as it then was; that a breadth of way shall continue, pursuing that general direction, and adequate *111 to the convenience and enjoyment of the way, as was the accustomed convenience and enjoyment at the time of the making of the grant.
Applying these general principles to the case in hand: The complainant is entitled to a way equal in convenience and enjoyment, and, in the general direction and width, as was the way at the time the conveyance was made by Barrow to Saunders. No more burden is to be enforced upon the defendant’s land, than is necessary to maintain a way equal in convenience and enjoyment, to the way as it was accustomed to be at the time of the grant. The defendant is entitled to make changes in the line of his fence, which do not impair the convenience and enjoyment to which the complainant is entitled, or change the general direction of the way. It is a principle of law, that no more passes by the grant of an easement, than what is requisite to the fair enjoyment of the privilege: 3 Kent Com., 420.
The general width of the lane .should be. thirty feet. But the defendant will not be required to set out his fences, to .give a greater width at any point than has been heretofore had at that point. And he will not be allowed to set in his fence at any point, so as to lessen the width below thirty feet.
Upon that part of the stoned track which deflects to the south, to avoid the small rock, the defendant will not be allowed to set in his fence, so as to diminish the width of the lane below thirty feet at that point.
At the approach from the east toward and to the creek, the defendant will not be allowed to lessen the width, (39 feet,) further than as now done by the new *112 fence already erected by him. A greater, width than thirty feet is proper at the ford of the creek.
The straightening of the fence, so as to include the old bridge site, is allowable. No use of the site for a bridge, has been had for the length of time sufficient to give her a right. It does not appear to have been accustomed to be used for such purpose, until of recent years, and then only for a short time.
By the width of the lane, is meant the width from fence to fence.
The complainant having the right of way of the character described, by virtue of the grant, it is not necessary to define the extent of way prescribed by the law, in the case of a way of pure necessity.
The decree of the Chancellor, will be modified to conform to this opinion. If the parties so desire, the clerk of the court will be directed to have the fence of the defendant set in conformity with the decree to be made pursuant to this opinion, with power to employ competent^ surveyor and assistants for the purpose.